29 September 2000

No. 2--99--1154

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

HEIDI HAPPEL and KENT HAPPEL, ) Appeal from the Circuit Court

) of McHenry County.

Plaintiffs-Appellants, ) 

) 

v. ) No. 95--LA--381

)

WAL-MART STORES, INC., d/b/a )

Wal-Mart, ) Honorable

) Michael T. Caldwell,

Defendant-Appellee. ) Judge, Presiding.  

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Heidi and Kent Happel, appeal the judgment of the circuit court of McHenry County granting summary judgment in favor of defendant, Wal-Mart Stores, Inc., and denying plaintiffs' motion to amend their complaint.  The court held that defendant had no duty to inform either plaintiff Heidi Happel or her physician that Heidi was potentially fatally allergic to a prescription drug;  it also denied plaintiffs' motion to amend their complaint to add counts sounding in wilful and wanton misconduct, fraud, and battery.  We affirm in part, reverse in part, and remand the cause.

The following facts are undisputed.  On August 4, 1993, Heidi contacted her physician, Dr. Ted Lorenc, looking for a more effective pain reliever to ease her menstrual cramps.  Heidi was allergic to aspirin, acetaminophen, and ibuprofen and was therefore unable to take those or related drugs.  Dr. Lorenc prescribed Toradol, a nonsteroidal anti-inflammatory drug (NSAID), and his office telephoned the prescription to defendant.

Heidi had been to defendant's pharmacy approximately six times before August 4, 1993, to have other prescriptions filled.  Each time she had a prescription filled at defendant's pharmacy, she was asked by pharmacy workers whether she had any drug allergies, and each time she replied that she was allergic to aspirin, acetaminophen, and ibuprofen.  Defendant required its pharmacy to solicit information from its customers concerning drug allergies before filling a prescription to avoid dispensing drugs to which the customers were allergic.  Two of defendant's pharmacists testified in their depositions that Heidi's allergies were entered into the pharmacy's computer system at some time prior to August 4, 1993.  In addition to the information contained in the pharmacy's computer system, to which the employees had access on August 4, Heidi's allergies to aspirin, acetaminophen, and ibuprofen were handwritten on the prescription for Toradol.

Toradol is an NSAID and is contraindicated for persons allergic to aspirin and other NSAIDs.  Despite their knowledge that Heidi was allergic to aspirin, acetaminophen, and ibuprofen, plaintiffs were unaware that those drugs belonged to the NSAID class of drugs or that Heidi was allergic to drugs belonging to that class of drugs and should not take any drugs belonging to that class.  Plaintiffs had not heard of or used Toradol before August 4, 1993.

Pharmacist Florence Bowser, who was the only pharmacist working at defendant's pharmacy on August 4, 1993, testified at her deposition that she had no independent recollection of filling Heidi's prescription on that day.  Bowser testified that she knew that Toradol was contraindicated for persons allergic to aspirin and other NSAIDs.  Bowser also testified that pharmacists are required to know a customer's drug allergies and contraindications.  She testified that, according to her custom and practice, when she tried to fill a Toradol prescription for a person allergic to aspirin and NSAIDs, a contraindication alert would have flashed across the computer screen that would have halted the prescription process by preventing the pharmacist from printing the prescription label or entering the charges.  Bowser testified that the process could be continued only if a pharmacist overrode the contraindication alert.  Bowser further testified that defendant's policies required the pharmacist to contact the prescribing physician and inform him of the contraindication for his patient.  Bowser testified that there was no record or indication that Heidi's prescribing physician, Dr. Lorenc, had been contacted about the contraindication in this case.

On August 4, 1993, Kent visited defendant's pharmacy to have Heidi's prescription filled.  Before the prescription was filled, a pharmacy employee asked Kent about Heidi's drug allergies and Kent informed the worker that Heidi was allergic to aspirin, acetaminophen, and ibuprofen.

Both Bowser and defendant's pharmacy manager, Steven Odes, testified during deposition that the only way Heidi's Toradol prescription could have been filled was to use a special code to override the contraindication alert.  Neither Dr. Lorenc nor his staff received a call from defendant advising that Toradol was contraindicated for Heidi, and defendant has not produced a record to indicate that the pharmacy contacted Dr. Lorenc.  Bowser testified that it was her custom and practice to document any conversation with a physician either on the prescription or in the patient's computer record.

Dr. Lorenc testified in his deposition that, at the time he prescribed Toradol for Heidi, he did not know that it was contraindicated for patients with allergies to aspirin or other NSAIDs.  Dr. Lorenc further testified that, had he known of the contraindication, he would not have prescribed it for Heidi.

Heidi began to feel the onset of respiratory distress after taking the first dose of Toradol.  She began a nebulizer breathing treatment and called defendant to determine if there were any reason that she would be having a reaction to Toradol.  Her first call was disconnected.  Heidi called again and was informed that there was no reason for her to be experiencing a reaction and that she need not worry.  Heidi then called her previous pharmacist, who was aware of her drug allergies, and he advised her to begin the nebulizer treatment if she had not yet done so and to go to the emergency room if her condition worsened.  Heidi went to the emergency room, where she was found to be experiencing anaphylactic shock.  Heidi testified that, as a result of taking Toradol, she currently experiences more frequent and intense asthma episodes and that she also experienced seizures and an exacerbation of multiple sclerosis.

On September 30, 1994, plaintiffs filed this negligence action against defendant and Dr. Lorenc.  On March 8, 1999, defendant filed a motion for summary judgment.  On March 15, 1999, plaintiffs settled with Dr. Lorenc and dismissed him from their complaint.  Plaintiffs then filed motions to amend their pleadings and to add prayers for punitive damages, which were denied by the trial court.

The trial court also denied defendant's motion for summary judgment.  Defendant filed a motion to reconsider, arguing that defendant neither owed plaintiff a legal duty to warn nor voluntarily assumed such a duty.  On September 17, 1999, the trial court granted summary judgment in favor of defendant and denied plaintiffs' motion to amend their pleadings.  Plaintiffs timely appeal.

Following plaintiffs' notice of appeal, we granted leave to the National Association of Boards of Pharmacy (NABP) to file an 
amicus
 
curiae
 brief supporting plaintiffs' arguments.  We also granted leave for the National Association of Chain Drug Stores to file an 
amicus
 
curiae
 brief supporting defendant's arguments.  Defendant filed a motion in this court seeking to strike the NABP's brief for including materials outside the record.  We ordered defendant's motion taken with the case.  The NABP filed a response to defendant's motion and defendant filed a motion to strike the response, arguing that an 
amicus
 does not have the right to engage in motion practice.  We do not believe that, merely by responding to defendant's motion, the NABP has engaged in motion practice before this court.  Additionally, defendant's reliance upon 
Zurich Insurance Co. v. Raymark Industries, Inc.
, 118 Ill. 2d 23, 59-60 (1987), is inapposite, as there the 
amicus
 filed a motion to strike the brief of another 
amicus
.  Here, the NABP merely filed objections to defendant's motion.  Thus, we deny defendant's motion to strike the NABP's response.  Last, upon review of defendant's motion to strike the NABP's brief, we find that the materials provided by the NABP are relevant to standards of practice and care, all of which are issues raised by the parties in this case.  Accordingly, we deny defendant's motion to strike the NABP's brief.

Turning to the substantive issues on appeal, plaintiffs first contend that the trial court erroneously granted summary judgment in favor of defendant.  Whether the trial court properly granted summary judgment is a question of law that we review 
de
 
novo
.  
Colonial Inn Motor Lodge, Inc. v. Gay
, 288 Ill. App. 3d 32, 39 (1997).  Summary judgment is properly granted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1998).  "A court should not grant summary judgment unless the movant's right to it is clear and free from doubt, and the court must construe the evidence strictly against the movant and liberally in favor of the nonmovant."  
Colonial Inn Motor Lodge
, 288 Ill. App. 3d at 39.

In general, "[a] pharmacist owes a duty of ordinary care in practicing his profession, but such care requires the highest degree of prudence, thoughtfulness and diligence, and it is proportioned to the danger involved."  
Eldridge v. Eli Lilly & Co.
, 138 Ill. App. 3d 124, 126 (1985).  The contours of a pharmacist's duty have been developed during the preceding century; however, no reported case has dealt squarely with the issue presented in this case, namely, whether a pharmacist has a duty to warn a patient concerning a certain, adverse, and potentially fatal drug interaction with the prescribed medication.  Before addressing this question, we must first determine the scope of the pharmacist's duty.

In 
Jones v. Irvin
, 602 F. Supp. 399 (S.D. Ill. 1985), the federal district court, sitting in diversity, held that a pharmacist does not have a duty to warn either the patient or the physician that the medication is being prescribed in an excessive amount when the pharmacist has correctly filled the prescription.  
Jones
, 602 F. Supp. at 402.  In 
Eldridge
, the court followed 
Jones
 in holding that a pharmacist did not have a duty to notify the patient or physician that a drug was being prescribed in dangerous amounts.  
Eldridge
, 138 Ill. App. 3d at 126-27.  The court reasoned that "[t]he propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition.  A prescription which is excessive for one patient may be entirely reasonable for the treatment of another."  
Eldridge
, 138 Ill. App. 3d at 127.  The court concluded that, if it imposed on the pharmacist a duty to warn, the pharmacist would have to "learn the customer's condition and monitor his drug usage," thereby "interject[ing] himself into the doctor-patient relationship and practic[ing] medicine without a license."  
Eldridge
, 138 Ill. App. 3d at 127.

Next, our supreme court adopted the learned intermediary doctrine in 
Kirk v. Michael Reese Hospital & Medical Center
, 117 Ill. 2d 507 (1987).  
Kirk
 held that a drug manufacturer did not have a duty directly to warn the customer about possible side effects of the medication.  
Kirk
, 117 Ill. 2d at 519.  The court reasoned that the doctor functions as a learned intermediary between the drug manufacturer and the patient and uses his medical judgment in deciding what information and warnings he or she will provide the patient.  
Kirk
, 117 Ill. 2d at 519.  In 
Leesley v. West
, 165 Ill. App. 3d 135 (1988), this court extended the learned intermediary doctrine to pharmacists by precluding the imposition of a duty to warn of dangerous side effects of a drug.  
Leesley
, 165 Ill. App. 3d at 141-42.  In 
Leesley
, the plaintiff suffered one of the known, but infrequent, side effects of the prescription drug he was taking.  
Leesley
, 165 Ill. App. 3d at 137.  The court reasoned that the pharmacist could have no greater duty to warn the customer than the drug manufacturer and held that it was the physician's duty to inform a patient of the risks and side effects associated with a medication.  
Leesley
, 165 Ill. App. 3d at 142-43.

More recently, the issue of whether a pharmacist has a duty to warn that a drug is being prescribed in an excessive quantity was again addressed in 
Fakhouri v Taylor
, 248 Ill. App. 3d 328 (1993).  The court held that there was no duty imposed on the pharmacist to warn that a drug was prescribed in an excessive quantity and that it would be "illogical and unreasonable to impose a greater duty on the pharmacist who properly fills a prescription than is imposed on the drug's manufacturer."  
Fakhouri
, 248 Ill. App. 3d at 332-33.

Most recently, this court held that, if a pharmacist voluntarily undertakes a duty to warn a customer about the side effects of a medication, that duty extends only to the information that the pharmacist provides.  
Kasin v. Osco Drug, Inc.
, 312 Ill. App. 3d 823, 827 (2000); see also 
Frye v. Medicare-Glaser Corp.
, 153 Ill. 2d 26 (1992).  The court reasoned that, once a pharmacist provides information, he removes himself from the protection of the learned intermediary doctrine, but only to the extent that the information he has chosen to provide must be complete and accurate.  
Kasin
, 312 Ill. App. 3d at 827.  Merely by choosing to warn about a few specific side effects, the pharmacist is not required to warn about all possible side effects.  
Kasin
, 312 Ill. App. 3d at 828-

29.

The foregoing cases teach that the law does not impose upon the pharmacist a generalized duty to warn the physician or the patient about the side effects or excessive quantities of a prescribed medication.  The underlying rationale of these cases is that to impose such a duty on the pharmacist would effectively require him to exercise medical judgment in deciding whether the physician had correctly prescribed a medication and in the correct amount to treat a condition.  Further, these cases all place the responsibility upon the physician to inform the patient concerning the risks and benefits of the chosen medication.  This rationale, however, is not implicated under the facts of this case.  Here, the pharmacist knew that Toradol was contraindicated for Heidi; in other words, the pharmacist knew that, for Heidi, Toradol was a poison and would injure, if not kill, her.  This is not a case in which the plaintiff is asking the pharmacist to exercise any modicum of medical judgment or to interject himself into the doctor-patient relationship.  Therefore, the foregoing cases, along with their rationale, are inapposite to the facts of this case, and the duty defined in those cases does not necessarily extend to the facts of this case.  We must therefore consider the parties' arguments concerning the duty to warn.

Plaintiffs argue that the duty defendant owed to Heidi included a duty to warn her or her physician that, based on her known allergies, she would experience an adverse and possibly fatal reaction to Toradol and that, therefore, her use of Toradol was contraindicated.  Defendant counters that a pharmacist owes no duty to warn a customer or his or her physician about any potential side effects associated with a medication.

Whether a duty exists is a question of law.  A court determines whether a duty exists in a particular case by considering  (1) the foreseeability that the defendant's conduct may injure another; (2) the likelihood of an injury occurring; (3) the burden placed on the defendant by imposing a duty; and (4) the consequences of imposing this burden on the defendant.  
Colonial Inn Motor Lodge
, 288 Ill. App. 3d at 40.  Based on our consideration of these factors, we conclude that, in this case, defendant owed plaintiffs a duty to warn.

First, rather than merely being foreseeable that defendant's decision not to warn Heidi or Dr. Lorenc that Toradol was contraindicated could cause Heidi injury, it was nearly certain that Heidi would sustain injury, and perhaps a fatal injury, if she ingested the Toradol as prescribed.  Thus, both the foreseeability and likelihood of injury strongly favor imposing a duty to warn on defendant.

The burden on defendant to warn either Heidi or Dr. Lorenc is minimal.  Defendant merely needed to place a telephone call to Dr. Lorenc and inform him that Toradol was contraindicated for patients who were allergic to aspirin and NSAIDs.  Alternatively, defendant could have given the same information to Heidi.  In either case, the burden on defendant to warn about the contraindication was extremely small.  This factor also strongly favors imposing a duty to warn on defendant.

Next, we consider the consequences of imposing a duty.  Defendant contends that, by requiring defendant to inform either Heidi or Dr. Lorenc about the contraindication, we would be interjecting the pharmacist into the middle of the doctor-patient relationship and requiring the pharmacist to second-guess the doctor and act as a sort of safety supervisor.  See 
Eldridge
, 138 Ill. App. 3d at 126-27.  We fail to see the merit of defendant's contention.  Defendant is not required to make some sort of medical judgment here, such as whether the dosage is therapeutic or dangerous.  Rather, defendant is merely required to pass on the knowledge that, for Heidi, the prescribed drug is a possibly deadly poison.  Defendant is neither insinuating itself into the doctor-

patient relationship nor second-guessing the physician.  Instead, defendant is simply Heidi's last, best chance to avoid serious injury or death.  We determine that, under the facts of this case, the consequences of imposing the duty to warn on defendant are minimal and will not result in some sort of across-the-board burden on the pharmacist to fully instruct his or her customers about all side effects.

Additionally, the NABP also suggests that defendant had a duty to warn in this case.  The NABP notes that pharmacy is a profession, with certain universal standards and practices.  The NABP observes that the duty to warn in this case is consonant with the professional practices and standards expected of a pharmacist.  Thus, the NABP suggests that the recognition of a duty in this case is commensurate with the status of pharmacy as a profession and with the pharmacist's professional responsibilities.  We find the NABP's advocacy to be persuasive: that the professional association for pharmacists demands that pharmacists be held to a duty to warn in this case strongly supports our conclusion.  Accordingly, we hold that, under the circumstances here, where defendant knew of Heidi's allergies, where defendant knew that Toradol was contraindicated for a person with Heidi's allergies, and where defendant knew that injury or death was substantially certain to result, defendant had an affirmative duty to disclose, either to Dr. Lorenc or to Heidi, the information that Heidi should not take Toradol.

Defendant argues that 
Leesley
 controls the legal result in this case.  We disagree.  In 
Leesley
, the court held that the pharmacist was not required to give the customer warnings about general and infrequent side effects.  
Leesley
, 165 Ill. App. 3d at 137, 143.  Here, by contrast, the pharmacist actually knew that Toradol was contraindicated in Heidi's specific case and that injury or death would result if Heidi took the medication.  Thus, the side effect was not merely an infrequent possibility but was substantially certain to result in this case.  
Leesley
, therefore, is factually distinguishable.  In light of our determination, we need not address plaintiffs' remaining arguments on this issue.

Next, plaintiffs contend that the trial court erred in denying them leave to amend their pleadings to state claims of wilful and wanton misconduct, battery, and fraud and to add prayers for punitive damages.  Whether to permit or refuse amendments to pleadings is committed to the trial court's discretion, and we will not disturb its determination absent an abuse of discretion.  
Meyers v. Rockford Systems, Inc.
, 254 Ill. App. 3d 56, 66 (1993).

Initially, we note that plaintiffs have abandoned their wilful and wanton misconduct claim.  On April 30, 1999, plaintiffs filed a motion for leave to amend their pleadings to add a count of wilful and wanton misconduct.  Plaintiffs' proposed amended complaint added count III for wilful and wanton misconduct.  On July 16, 1999, the trial court denied plaintiffs' motion for leave to amend their pleadings.  On August 9, 1999, plaintiffs filed an amended motion for leave to amend their pleadings.  This time, the amended complaint included count III for battery and count IV for fraud; plaintiffs did not include any count or allegations of wilful and wanton misconduct, nor did they incorporate that count by reference to any earlier pleadings.  Allegations in a former complaint not incorporated into the final amended complaint are deemed to be waived.  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 384 (1996).  Accordingly, plaintiffs have waived their contentions concerning wilful and wanton misconduct.

We also find that the trial court did not abuse its discretion in refusing plaintiffs leave to amend their complaint to include counts for battery and fraud.  To allege battery, the plaintiff must allege that the defendant intended to cause a harmful or offensive contact and that a harmful or offensive contact resulted.  
Cohen v. Smith
, 269 Ill. App. 3d 1087, 1090 (1995).  Plaintiffs' battery claim is fatally defective, as it fails to include a proper allegation of intent.  At best, plaintiffs alleged that defendant was reckless in filling the Toradol prescription.  These allegations fall short of the knowing or intentional conduct required to support a claim for battery.  Thus, the trial court did not abuse its discretion in refusing to grant plaintiffs leave to amend their complaint to include a count of battery.

In order to allege fraud, a plaintiff must specifically allege that the defendant intentionally made a false statement of material fact, the plaintiff had a right to rely on the statement and did so, the defendant made the statement to induce the plaintiff to act, and the plaintiff's reliance on the statement led to an injury.  
Israel v. National Canada Corp.
, 276 Ill. App. 3d 454, 464 (1995).  Plaintiffs' claim of fraud is again fatally defective, as they have alleged, at best, that the purported misrepresentation was recklessly made, not intentionally.  Thus, the trial court did not abuse its discretion in refusing to grant plaintiffs leave to amend their complaint to include a count of fraud.

Accordingly, we affirm the judgment of the circuit court of McHenry County that denied plaintiffs leave to amend the complaint, reverse the trial court's judgment granting summary judgment in favor of defendant and against plaintiffs, and remand the cause for further proceedings consistent with this order.

Affirmed in part and reversed in part; cause remanded.

GEIGER and GALASSO, JJ., concur.