**In re Richard MOORE.**

**In re Bobby Brooks.**

**In re Pigs To Hogs, Inc.**

**In re Gone Hog Wild.**

**In re Pig Palace, Inc.**

**In re James Blissard.**

**In re Jerry Milner.**

**Jim Norman, et al., Plaintiffs**

**v.**

**Prestage Farms, Inc., et al., Defendants.**

**Bankruptcy Nos. 02–16606, 02–16607, 02–16836, 02–17171, 02–17184, 02–17267, 02–17269.**

**Adversary No. 03–1100.**

United States Bankruptcy Court, N.D. Mississippi.

June 21, 2004.

Jeffrey K. Tyree, Jackson, MS, Craig M. Geno, Ridgeland, MS, for Debtors.

Danny E. Cupit, Jackson, MS, Nina S. Tollison, Oxford, MS, William Liston, Winona, MS, for Plaintiffs.

Trudy D. Fisher, William F. Blair, Jeffrey K. Tyree, John E. Wade, Jr., Jackson, MS, Robert J. Dambrino, III, Grenada, MS, James H. Herring, Canton, MS, for Defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are motions for summary judgment filed by Prestage Farms, Inc., (Prestage Farms), and each of the seven debtor entities (debtor/defendants) in the above adversary proceeding; a response thereto having been filed by Jim Norman, et al, (plaintiffs); and the court, having considered same, hereby finds as follows, to-wit:

## I.

### Jurisdiction

Since the Chapter 12 debtors are presently named defendants in the above captioned adversary proceeding, this court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference entered by the United States District Court for the Northern District of Mississippi on July 27, 1984.

The aspects of this cause of action which directly affect the Chapter 12 debtor/defendants would be considered collectively a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O). Because of the direct impact upon the debtor/defendants, the aspects of this cause of action which seek relief against Prestage Farms would be considered collectively a "non-

core" or "related" proceeding as contemplated by 28 U.S.C. § 157(c).

## II.

On February 27, 2004, an opinion and order were entered in this proceeding relating to the motions for summary judgment filed by Prestage Farms and the seven debtor/defendants. The opinion and order are incorporated herein by reference. The court withheld a dispositive decision on the motions for summary judgment until the parties could brief the issue of whether an individual plaintiff enjoyed a private right of action to seek redress for violations of the Mississippi Air and Water Pollution Control Law, codified in Miss. Code Ann. § 49–17–1 through § 49–17–43, (referred to occasionally herein as the "law").

The motions for summary judgment asserted that the cause of action initiated by the plaintiffs was barred by the one year statute of limitations found in Miss.Code Ann., § 95–3–29 (1972), which is set forth in pertinent part as follows:

**§ 95–3–29  Immunity of Certain Agricultural Operations From Nuisance Actions.**

(1) In any nuisance action, public or private, against an agricultural operation, including forestry activity, proof that said agricultural operation, including forestry activity, has existed for one (1) year or more is an absolute defense to such action, if the conditions or circumstances alleged to constitute a nuisance have existed substantially unchanged since the established date of operation.

(2) The following words and phrases as used in this section shall have the meanings given them in this section:

(a) "Agricultural operation" includes, without limitation, any facility for the production and processing of crops, livestock, farm-raised fish and fish products, livestock products, wood, timber or forest products, and poultry or poultry products for commercial or industrial purposes.

(b) "Established date of operation" means the date on which the agricultural operation, including forestry activity, commenced operation. If the physical facilities of the agricultural operation, including forestry activity, are subsequently expanded, the established date of operation for each expansion is deemed to be a separate and independent "established date of operation" established as of the date of commencement of the expanded operation and the commencement of expanded operation shall not divest the agricultural operation of a previously established date of operation.

. . . .

(3) The provisions of this section shall not be construed to affect any provision of the "Mississippi Air and Water Pollution Control Law."

. . . .

In this context, the defendants asserted that the respective farms were fully operational for more than one year before the plaintiffs filed their lawsuit in the Montgomery County Chancery Court. Accordingly, they argued that § 95–3–29(1) provided an absolute defense to the plaintiffs' nuisance cause of action.[1]

In response, the plaintiffs alleged that the one year bar of § 95–3–29(1) did not apply because the farming operations had not remained "substantially unchanged"

---

**1.** Section 95–3–29 is the Mississippi version of the law that is commonly referred to as the "right to farm" statute.

since their respective established dates of operation. In addition, they asserted that their cause of action also included violations of the Mississippi Air and Water Pollution Control Law which is specifically excepted from the one-year statute of limitations by § 95–3–29(3).

As to whether a private right of action exists under the Mississippi Air and Water Pollution Control Law, the court previously concluded in its earlier order as follows:

2. If the court concludes that a private right of action does exist, the one year period of limitations set forth in § 95–3–29(1) will not bar the plaintiffs' cause of action, if it is indeed viable, under the Mississippi Air and Water Pollution Control Law. The motions for summary judgment will thereafter be overruled to this extent.

3. If the court concludes that a private right of action does *not* exist, § 95–3–29(1) bars the plaintiffs' cause of action against Gone Hog Wild, Inc., Pig Palace, Inc., as well as, Prestage Farms' Isolation Farm # 1, and Isolation Farm # 5. This could also be applicable to Pigs to Hogs, Inc., if it never installed an operable incinerator.

4. In addition, should a private right of action *not* exist, § 95–3–29(1) would likewise bar the plaintiffs' cause of action against Prestage Farms and the remaining debtor/defendants for events occurring prior to the installation of the incinerators on the respective farms, as well as, to any operations not substantially changed by the installation of the incinerators. Any nuisance activities or events attributable to or caused by the incinerators would remain actionable if the installation of the incinerators substantially changed the previously existing operations.

## III.

The question of whether a private right of action exists under the Mississippi Air and Water Pollution Control Law is an issue of first impression in Mississippi. However, to draw from an analogy, the court would look to *Doe v. State ex rel. the Mississippi Department of Corrections,* 859 So.2d 350 (Miss.2003), where the Mississippi Supreme Court was called upon to determine if a private right of action was created under the Uniform Act for Out-of-State Parolee Supervision. This Act, which is known as the "Compact" and is found at Miss.Code Ann. § 47–7–71 (Rev. 2000), provides that the "receiving state" will assume responsibility over parolees and probationers released from the "sending state."

After serving six years for a conviction for aggravated assault and attempted robbery in Illinois, Michael M. Adams was considered for parole. As provided in the "Compact," he was released from the Illinois prison system and moved to Mississippi to reside with his parents where his supervision became the responsibility of the Mississippi Department of Corrections. Shortly after establishing residency in Mississippi, Adams was indicted, tried, and convicted of rape. The victim filed a notice of claim with the Attorney General of the State of Mississippi pursuant to the Mississippi Tort Claims Act. She then filed suit against the State of Mississippi alleging willful and gross negligence on the part of the state parole board and the Mississippi Department of Corrections in receiving and supervising Adams. The State asserted a statute of limitations defense contending that any alleged tortious conduct occurred not at the time of the rape, but rather on the date when the Mississippi Department of Corrections accepted Adams for supervision. The trial court granted the State's motion for summary judgment on the statute of limita-

tions issue, and an appeal was taken. In its opinion, the Mississippi Supreme Court noted that it was first required to determine whether a private right of action could be brought under the Uniform Act for Out–of–State Parolee Supervision. The court held as follows:

> The general rule for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute. *See Blockbuster, Inc. v. White,* 819 So.2d 43, 44 (Ala. 2001); *Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 923 (Colo.1997); *Nichols v. Kan. Political Action Comm.,* 270 Kan. 37, 11 P.3d 1134, 1143 (2000); *Charlton v. Town of Oxford,* 774 A.2d 366, 372 (Me.2001); *Walker v. Chouteau Lime Co.,* 849 P.2d 1085, 1086 (Okla. 1993). We have also found no private right of action for violations of various statutes and regulations. *See, e.g., Moore ex rel. Moore v. Mem'l Hosp. of Gulfport,* 825 So.2d 658, 665–66 (Miss. 2002) (finding violation of State Board of Pharmacy's internal regulations did not create a separate cause of action); *Allyn v. Wortman,* 725 So.2d 94, 102 (Miss. 1998) (finding Miss.Code Ann. § 75–71–501, which prohibits fraud or deceit in connection with the offer, sale or purchase of securities did not create private right of action.)

*Doe v. State ex rel. The Mississippi Department of Corrections,* 859 So.2d 350, 355 (Miss.2003)

The general rule for determining the existence of a private right of action, that is, through the examination of legislative intent, acknowledged by the Mississippi Supreme Court in the above quote, coincides with earlier United States Supreme Court opinions. In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the court held that when determining whether an express or implied private right of action has been created by a statute, "what must ultimately be determined is whether Congress intended to create the private remedy asserted ..." *See also, Touche Ross & Co. v. Redington,* 442 U.S. 560, 568–574, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). (Congressional intent to create a private right of action is determined by analyzing statutory language and legislative history.)

It is important to note that the Supreme Court opinions, which address the issue of creating a private right of action through implication, make a distinction between a private *"right of action"* and a private *"remedy."* In *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* the court cited its earlier decision, *Touche Ross & Co. v. Redington, supra,* and commented as follows:

> While some opinions of the Court have placed considerable emphasis on the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, ..., what must ultimately be determined is whether Congress intended to create the private remedy asserted, as our recent decisions have made clear.

*Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11 at 15–16, 100 S.Ct. at 245, 62 L.Ed.2d 146.

In a more recent opinion, the Court, citing *Transamerica Mortgage Advisors, Inc. v. Lewis, supra,* found as follows: "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander v. Sandoval,* 532 U.S. 275, 286, 121 S.Ct. 1511, 1520, 149 L.Ed.2d 517 (2001). Even though the Su-

preme Court opinions cited herein are factually distinguishable from the matter presently before this court, they establish a clear road map for this court to follow in determining if the Mississippi Air and Water Pollution Control Law creates, expressly or by implication, a private right of action, as well as, a private remedy.

The court has thoroughly reviewed the Mississippi Air and Water Pollution Control Law in an attempt to discern whether there is a legislative intent to create a private right of action for its violation. Section 49–17–29 provides that it is unlawful for any person to cause pollution of the air or waters within the State of Mississippi. Section § 49–17–31 states that whenever "the commission or an employee thereof" has reason to believe that a violation has occurred, "the commission" may cause a written complaint to be served upon the alleged violator or violators. As explained in § 49–17–7(1), the "commission" is the Mississippi Department of Environmental Quality. Section 49–17–43 indicates that any person, found by "the commission" to be violating any of the provisions of the air and water pollution law shall be subject to a civil penalty for each violation.

With particular interest, the court examined § 49–17–35, entitled "Request for Hearing." This section provides, in part, as follows: "*Any interested person* shall have the right to request *the commission* to call a hearing for the purpose of taking action in respect to any matter *within the jurisdiction of the commission* by making a request therefor in writing." (emphasis added) It then states that upon the receipt of a request, "the commission" may conduct any investigation that it deems necessary, and, that within thirty days after the conclusion of a hearing, "the commission" may take whatever action it deems appropriate. As such, this section provides the

mechanism for a person or entity, affected by air or water pollution, to bring the matter before "the commission" for redress. However, the remedy available is that "the commission" may take whatever action it deems appropriate, such as ordering remedial procedures, in addition to the assessment of a civil penalty pursuant to § 49–17–43. Nothing in § 49–17–35, in particular, or in the Mississippi Air and Water Pollution Control Law, in general, remotely suggests that a private individual or entity is entitled to seek an award for damages in a judicial forum for violations of this law.

In the opinion of this court, the Mississippi Air and Water Pollution Control Law is a regulatory scheme which allows the State of Mississippi, not private individuals, to oversee and abate air and water pollution. While it does allow for private party participation, i.e., the right to initiate a request with "the commission," it clearly does not provide a private right of action or a private remedy for those persons adversely affected by air or water pollution.

## IV.

In support of its contention that the Mississippi Air and Water Pollution Control Law creates a private right of action by *implication*, the plaintiffs cited three Mississippi Supreme Court opinions. In *Vicksburg Chemical Co. v. Thornell*, 355 So.2d 299 (Miss.1978) and *T.K. Stanley, Inc. v. Cason*, 614 So.2d 942 (Miss.1993), the court considered jury instructions drawn from language found in the Mississippi Air and Water Pollution Control Law. In *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648 (Miss.1995), the court held that the period of limitations found in the Mississippi "right to farm" statute, set forth hereinabove, did not bar a cause of action seeking damages for wa-

ter pollution, the underlying facts of which were "very similar to the actions defined as violations" of the Mississippi Air and Water Pollution Control Law.

This court finds the plaintiffs' reliance on these three cases to be unpersuasive.

The *Vicksburg Chemical* and the *T.K.Stanley* cases were essentially *common law nuisance actions*. In *Vicksburg Chemical,* the court permitted the use of three jury instructions which had apparently been extracted from the Mississippi Air and Water Pollution Control Law. In *T.K. Stanley,* a jury instruction that had been given by the trial court was found to be improper because it was abstract and confusing to the jury. The issue of whether the plaintiffs could civilly prosecute a private right of action under the Mississippi Air and Water Pollution Control Law was not raised in either of these cases. This court does not believe that the permitted use of three jury instructions can transform, by implication, an otherwise common law nuisance action into a statutory private right of action under the air and water pollution law, particularly when there is no hint of a legislative intent to do so in the law itself.

In *Leaf River,* a common law nuisance action had been brought by landowners against a paper mill. Just because the court opined that the period of limitations set forth in the "right to farm" statute did not bar the plaintiffs' claims for damages, which occurred as much as one hundred miles downstream from the mill, does not necessarily mean that the land owners were being permitted to exercise a private right of action under the Mississippi Air and Water Pollution Control Law. The pertinent quote from this opinion is set forth as follows:

> There was a great deal of testimony concerning appellants' compliance with its permits and with state standards.

> *The allegations made by the appellees in their complaint are very similar to the actions defined as violations of the Air and Water Pollution Act. Given the purpose of § 95-3-29, it should not be allowed to defeat a nuisance action on property one hundred miles downstream from the mill.* In *Herrin v. Opatut,* 248 Ga. 140, 142, 281 S.E.2d 575, 578 (1981), the Georgia Supreme Court, in construing its "right to farm" statute, stated "that which may continue a nuisance regardless of urban sprawl, such as polluting a stream, is never protected by the statute since such activity does not become a nuisance as a result of 'changed conditions in the surrounding locality.'" Appellees' nuisance cause of action is not time-barred. (emphasis added)

*Leaf River Forest Products, Inc. v. Ferguson,* 662 So.2d 648 at 662.

The paragraph, quoted above, is essentially dicta since the conclusion was not necessary to the ultimate decision reached by the court. However, its message is simply that the period of limitations found in the "right to farm" statute should not bar a cause of action alleging the pollution of a river and seeking damages for landowners who were remotely located from the source of the pollution. In other words, the nature of the plaintiffs' cause of action in *Leaf River* did not "fit" within the preclusive purpose of § 95-3-29. The issue of whether the individual plaintiffs could invoke a private right of action or remedy under the Mississippi Air and Water Pollution Control Law was never raised or addressed in the proceeding.

As a result of the foregoing analysis, this court concludes that § 95-3-29(3) effectively permits the Mississippi Department of Environmental Quality, acting on its own volition or at the request of a private entity pursuant to § 49-17-35, to

pursue the statutory remedies set forth in the air and water pollution law notwithstanding the one year period of limitations set forth in § 95–3–29(1).

## V.

Having found that neither a private right of action nor remedy exists under the Mississippi Air and Water Pollution Control Law, the court finds that § 95–3–29(1) bars the plaintiffs' cause of action against Gone Hog Wild, Inc., Pig Palace, Inc., as well as, Prestage Farms Isolation Farm No. 1 and Isolation Farm No. 5. These defendants are entitled to an order dismissing the complaint as it relates to them. Pigs to Hogs, Inc., will likewise be entitled to dismissal if it never installed an operable incinerator. The court will withhold a ruling on Pigs to Hogs, Inc., until the record is supplemented through proof or stipulation so that the aforesaid factual issue might be determined.

The plaintiffs' cause of action shall be dismissed against Prestage Farms and the remaining debtor/defendants for events which occurred prior to the installation of the incinerators on each farm, as well as, to any operations not substantially changed by the installation of the incinerators. Any nuisance activities or events attributable to or caused by the incinerators shall remain actionable if the installation of the incinerators substantially changed the previously existing operations.