**Letha M. GRAY, By and Through Ella RUDD, as Next Friend for the Use and Benefit of Letha M. Gray Plaintiff**

v.

**BEVERLY ENTERPRISES–MISSISSIPPI, INC.; Beverly Health and Rehabilitation Services, Inc.; James C. Landers; David Devereaux; David R. Banks; Lewis Sewell; Charlie R. Sinclair, Jr.; Bobbie Lucille Blackard; Alicha D. Lindsay; John Does 1 Through 10; and Unidentified Entities 1 Through 10 (as to Beverly Healthcare–Northwest) Defendants**

No. CIV.A. 3:03CV151BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

May 12, 2003.

Francis McRae Turner, III, Richard E. Circeo, Robin E. Blackledge Blair, Mary Jane Perry, Wilkes & Mchugh, P.A., Hattiesburg, MS, for Plaintiff.

Senith C. Tipton, Michael Earl Phillips, Wilkins, Stephens & Tipton, P.A., Faye Murphree James, Wilkins, Stephens & Tipton, Melanie H. Morano, Wilkins, Stephens & Tipton, P.A., Jackson, MS, for Defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on Plaintiff's Motion to Remand. Having considered the Motion, Response, attachments to each, and supporting and opposing authority, the Court finds that the Motion is not well taken and should be denied.

### I. Background and Procedural History [1]

This cause of action arises out of alleged injuries suffered by Plaintiff Letha M.

---

1. The facts stated in this section of the Opinion and Order were generated from numerous pleadings submitted by the parties. By including the facts herewith, the Court is not attesting to their accuracy or their truth.

Gray while she was a resident at Beverly Healthcare–Northwest (hereinafter "Beverly Healthcare")[2], a nursing home facility located in Jackson, Mississippi. Plaintiff has resided at Beverly Healthcare from June 1991, to the present. Prior to her admission to the nursing home, Plaintiff suffered one or more cerebral strokes that impaired her cognitive ability to the extent that she was and is unable to care for herself on a fundamental level.

In a state court Complaint, which was filed in the Circuit Court of the First Judicial District of Hinds County, Mississippi on December 17, 2002, Plaintiff alleges that "Defendants failed to discharge their obligations of care to Letha M. Gray. As a consequence thereof, Letha M. Gray suffered catastrophic injuries, disfigurement, extreme pain, suffering and mental anguish." See, Complaint, ¶ 20. Plaintiff alleges that her injuries include "a) dehydration; b) multiple falls; c) unexplained injuries; [and] d) multiple pressure sores."

**2.** For reasons unknown to the Court, Beverly Healthcare is not a named Defendant in this case. However, as indicated by the caption of the case, Plaintiff relates the "unidentified entities 1 through 10" to Beverly Healthcare.

**3.** Beverly Enterprises holds an ownership interest in Beverly Healthcare. Beverly Enterprises is incorporated under the laws of the State of California, and its principal place of business is in Arkansas. Under 28 U.S.C. § 1332(c)(1), Beverly Enterprises is a corporate citizen of both California and Arkansas.

**4.** Beverly Health and Rehabilitation holds an ownership interest in Beverly Healthcare. Beverly Health and Rehabilitation is incorporated under the laws of the State of California, and its principal place of business is in Arkansas. Under 28 U.S.C. § 1332(c)(1), Beverly Enterprises is a corporate citizen of both California and Arkansas.

**5.** Landers was a holder of the license to operate Beverly Healthcare. He is a resident citizen of the State of Mississippi.

*Id.* The specific claims alleged in the Complaint are:

count one: Negligence against Beverly Enterprises–Mississippi, Inc. (hereinafter "Beverly Enterprises")[3], Beverly Health and Rehabilitation Services, Inc. (hereinafter "Beverly Health and Rehabilitation")[4], James C. Landers[5], David Devereaux[6] and David S. Banks[7].

count two: Negligence against Lewis Sewell[8], Charlie R. Sinclair, Jr.[9], Bobbie Lucille Blackard[10] and Alicha D. Lindsay[11].

count three: Medical malpractice.

count four: Malice and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of Letha M. Gray.

count five: Fraud.

count six: Breach of a fiduciary duty.

Plaintiff seeks an unspecified amount of compensatory and punitive damages.

**6.** Devereaux was a holder of the license to operate Beverly Healthcare. He is a resident citizen of the State of Arkansas.

**7.** Banks was a holder of the license to operate Beverly Healthcare. He is a resident citizen of the State of Arkansas.

**8.** Sewell was an administrator of Beverly Healthcare. He is a resident citizen of the State of Mississippi.

**9.** Sinclair was an administrator of Beverly Healthcare. He is a resident citizen of the State of Mississippi.

**10.** Blackard was an administrator of Beverly Healthcare. She is a resident citizen of the State of Mississippi.

**11.** Lindsay was an administrator of Beverly Healthcare. She is a resident citizen of the State of Mississippi.

Defendants removed the case to this Court on January 30, 2003, on grounds of diversity of citizenship jurisdiction. Defendants allege that the non-diverse Defendants were fraudulently joined, thus their citizenships should be disregarded in determining whether diversity of citizenship jurisdiction exists under 28 U.S.C. § 1332.

Plaintiff filed the subject Motion to Remand on February 10, 2003. The Motion to Remand is now ripe for consideration by the Court.

## II. Fraudulent Joinder Standard

■ Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin*, 882 F.2d at 190. To establish fraudulent joinder, the removing party must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, No. 02–60005, 326 F.3d 644, 2003 WL 1614211 at *2 (5th Cir. Mar. 28, 2003)(citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir.1999)).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir.2000).

In *Travis*, the United States Court of Appeals for the Fifth Circuit reiterated the standard by which a plaintiff's claims must be analyzed to determine the fraudulent joinder question. The *Travis* court held:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, however, must be reasonable*, not merely theoretical.

*Travis*, 326 F.3d 644, 648 (emphasis in original)(citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir.2002)). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 392–93 (5th Cir.2000). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *Badon*, 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the instate defendant." *Id.*

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in

favor of the non-removing party, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992), but *"only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon,* 224 F.3d at 394 (emphasis in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting diversity of citizenship jurisdiction. *Jernigan,* 989 F.2d at 816.

### III. Analysis—Fraudulent Joinder

Diversity of citizenship jurisdiction requires satisfaction of the following two factors: (1) amount in controversy; and (2) diversity of citizenship. These requirements are set forth in 28 U.S.C. § 1332(a), which states in relevant part "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States...." The Complaint does not specify a dollar amount of damages sought by Plaintiff. However, the Notice of Removal alleges an amount in controversy exceeding $75,000, and this allegation is not denied by Plaintiff. Based on Plaintiff's silence on the amount in controversy issue, and based on the nature of the subject claims, the Court finds that the amount in controversy requirement of § 1332(a) is met. *See,* Fed.R.Civ.P. 8(d) (stating that allegations in a pleading that are not denied are deemed admitted). The issue to be resolved is whether the non-diverse Defendants, Landers, Sewell, Sinclair, Blackard and Lindsay, were fraudulently joined.[12]

Landers held the license to operate Beverly Healthcare. Sewell, Sinclair, Blackard and Lindsay were administrators of the facility. For purposes of analyzing fraudulent joinder, the five non-diverse Defendants were disclosed agents of the two corporate Defendants, Beverly Enterprises and Beverly Health and Rehabilitation. If Plaintiff asserted one or more viable claims against any one of the non-diverse Defendants, then this case must be remanded to state court. To determine whether Plaintiff asserted a cause of action against the non-diverse Defendants for which relief may be granted in state court, each count in the Complaint must be analyzed.

**A. Count One: Negligence Against Beverly Enterprises, Beverly Health and Rehabilitation, James C. Landers, David Devereaux and David S. Banks and Count Two: Negligence Against Lewis Sewell, Charlie R. Sinclair, Jr., Bobbie Lucille Blackard and Alicha D. Lindsay**

Under Mississippi law, an agent of a disclosed principle can incur "independent liability when his conduct constitutes *gross negligence,* malice, or reckless disregard for the rights" of another. *Bass v. California Life Ins. Co.,* 581 So.2d 1087,

---

12. Plaintiff also sued unidentified "John Does 1 through 10; and Unidentified Entities 1 through 10." Under 28 U.S.C. § 1441(a), "[f]or purposes of removal...the citizenship of defendants sued under fictitious names shall be disregarded." Based on the provisions of § 1441(a), the Court must disregard any arguments pertaining to the "John Doe" Defendants and the "Unidentified Entities" Defendants.

1090 (Miss.1991) (emphasis added). Mississippi does not recognize a cause of action against an agent for simple negligence. Therefore, Plaintiff's claims against the non-diverse Defendants for negligence are not claims for which relief may be granted in state court. Accordingly, the claims for simple negligence must be dismissed.

### B. Count Three: Medical Malpractice

 Under Mississippi law, "medical malpractice" is defined as "legal fault by a physician or surgeon." *Boyd v. Lynch*, 493 So.2d 1315, 1318 (Miss.1986) (citation omitted). The term "physician" encompasses "all persons possessing an M.D. and providing medical or surgical services." *Id.* None of the non-diverse Defendants is either a physician or a surgeon, as defined by Mississippi law. Therefore, the medical malpractice claims against the non-diverse Defendants must be dismissed.

### C. Count Four: Malice and/or Gross Negligence Which Evidences a Willful, Wanton or Reckless Disregard for the Safety of Letha M. Gray

Count four of the Complaint contains allegations that the non-diverse Defendants were grossly negligent, *inter alia*, in: (1) failing to adequately care for Plaintiff; (2) failing to adequately staff Beverly Healthcare; (3) failing to adequately supervise the staff; (4) failing to develop or maintain an adequate resident care plan; (5) failing to maintain records in an adequate manner; and (6) failing to provide a safe environment at Beverly Healthcare. As all of these claims pertain to management of Beverly Healthcare, the claims in count four of the Complaint are hereinafter collectively referenced as "inadequate management." No Mississippi case law directly relates to whether a manager or administrator of a nursing home facility can be held personally liable for damages suffered by a resident at a nursing home under the theory of inadequate management. This court is therefore *Erie*-bound to determine how the Mississippi Supreme Court would rule if faced with the issue.

 Defendants' fraudulent joinder arguments are based on the principles of agency. "[A]gency exists when one acts under either the express or apparent authority of a principal." *FSC Sec. Corp. v. McCormack*, 630 So.2d 979, 988 (Miss. 1994) (McRae, J., dissenting) (citing *Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172 (Miss.1990)); *Malta Life Ins. Co. v. Estate of Washington*, 552 So.2d 827 (Miss.1989). Under Mississippi law, an agent of a disclosed principle can incur "independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights" of another. *Bass*, 581 So.2d at 1090. Defendants argue that the non-diverse Defendants, as disclosed agents of the two diverse corporate Defendants, can incur no personal liability for the gross negligence claims asserted by Plaintiff. Plaintiff counter-argues that the non-diverse Defendants can be individually liable because they *personally* exercised grossly negligent conduct by inadequately managing the affairs of Beverly Healthcare.

To prove any claim of negligence, a plaintiff must first establish that a defendant owes a duty of care under the circumstances. *Warren v. Glascoe*, —— So.2d ——, 2003 WL 282574 at *4 (2003) (citation omitted). Of course, a plaintiff must also prove a breach of the duty, causation and resulting damages. *Id.* The particular issue in this case is whether the duty to adequately manage Beverly Healthcare was owed by the non-diverse Defendants to Plaintiff, or whether the duty was owed to the two corporate Defendants that owned Beverly Healthcare. If the duty

was owed to Plaintiff, then Plaintiff has asserted a viable state law cause of action and the case must be remanded. Conversely, if the duty was owed to the corporate Defendants, then Plaintiff has no valid cause of action against the non-diverse Defendants, requiring dismissal of the non-diverse Defendants and denial of Plaintiff's Motion to Remand.[13] The following analysis indicates that, absent extenuating circumstances, the duty of a manager or administrator of a nursing home facility to adequately manage the affairs of the facility is owed to the business itself, rather than to third-parties.

In *Griffin v. Dolgen Corp., Inc.*, 143 F.Supp.2d 670 (S.D.Miss.2001), this Court considered whether a store manager could be personally liable for the injuries suffered by a business invitee in a slip and fall accident. This Court analyzed the following language from *Waller v. Dixieland Food Stores, Inc.*, 492 So.2d 283, 285 (Miss. 1986): "In Mississippi, an owner, occupant, *or person in charge of a premises* owes an invitee or business visitor a duty to exercise ordinary care to keep the premises in a reasonably safe condition...." *Griffin*, 143 F.Supp.2d at 671 (emphasis in origi-

nal). Finding that the store manager was not personally liable, the Court stated:

[T]he issue before the Court is whether the language "or person in charge" was intended to create liability for a store manager in addition to the owner of the store.

The Court finds that such was probably not the intent of the Mississippi Supreme Court. First, the opinion in *Dixieland Food* is a 1986 decision. In the approximately fifteen years that have passed, the Mississippi Supreme Court has never ruled or even intimated that this holding creates liability for a store manager. Second, to saddle a store manager with personal liability in a case such as this, where there is no evidence that the slippery substance on the floor is attributable to an act of the manager, would essentially make the store manager the personal guarantor of each customer's safety. The Court is of the opinion that liability, if any, more properly belongs to the store owner who is in a better position through protections such as insurance to bear the cost of such suits.

*Id.* at 671–72; *see also, Jackson v. Gordon,* 173 Miss. 759, 163 So. 502, 503 (1935)(cit-

13. The underlying principles set forth in this paragraph were artfully articulated by the Mississippi Supreme Court in *Mississippi Power and Light Co. v. Smith*, 169 Miss. 447, 153 So. 376, 379–80 (1934), as follows:

[T]he more modern rule, which we think is based upon better reasoning, is that the relation of agency does not exempt a person from liability for an injury to a third person resulting from his neglect of duty for which he would otherwise be liable. This liability is not based upon the contractual relation existing between the principal and agent, but upon the common law obligation that all persons must so use that which he controls as not to injure another. But it must be borne in mind that this rule of liability always rests upon the question of the duty of the agent toward the injured party and

his negligent disregard or violation of that duty, and that where no duty exists there can be no liability. It is the fact that the agent is guilty of a wrongful or negligent act amounting to a breach of duty which he owes to the injured person that makes him liable. It seems, therefore, that the modern rule tends to abolish the distinction between the agent's acts of commission and omission wherever such act involves a breach of duty. 21 R.C.L. 851; Story on Agency, § 309.

\* \* \* \* \* \*

The rule now generally is that, if both the agent and the master owe a duty to another, they may be held liable for a breach thereof jointly or severally, although the liability may spring from a different rule of law.

ing the Restatement of Agency, § 358, holding that "[t]he agent of a disclosed...principal is not subject to liability for the conduct of other agents unless he assists them in the performance of a tortious act or permits them to commit it.")

Another case that provides personal liability protection to managers or administrators is *Jackson v. Gordon*, 173 Miss. 759, 163 So. 502 (1935). In that case, Gordon, a member of the Hinds County Board of Supervisors, was sued in his individual capacity for injuries suffered by Jackson in an accident. The accident was allegedly caused by the driver of a Hinds County road maintenance truck. The truck driver was working pursuant to a "gentleman's agreement" with Gordon, but the work was done for the benefit of Hinds County, and Hinds County paid for the truck driver's services. Finding that Gordon was not personally liable to Jackson, the court held:

In the present case the member of the board had nothing whatever to do with the alleged wrongful act of Northern [the truck driver][.] Gordon was acting in the capacity of road commissioner for his district; Northern, although employed by Gordon acting as such commissioner, was the servant of the county and not of Gordon. The county was the principal, not Gordon. The governing principles are laid down in A.L.I. Rest. Agency § 358, subsec. 1, as follows:

(1) The agent of a disclosed or partially disclosed principal is not subject to liability for the conduct of other agents unless he assists them in the performance of a tortious act or directs or permits them to commit it. * * * Illustration: 1. A is employed by P as General manager. B, a servant under the immediate direction of A, is negligent in the management of a machine, thereby injuring T, a business visitor. A is not liable to T.

Those principles are supported by the authorities generally. Story on Agency (9th Ed.) § 331.

Appellant relies on the well-established rule in this state, and generally in this county, that a ministerial executive or administrative officer owing a duty to an individual is liable to that individual for the misfeasance, malfeasance, or nonfeasance of his deputy to whom he has confided its performance so long as the deputy acts by color of his office. We do not think that rule has any application to this case. Northern was not the servant of Gordon but of the county. Gordon was a mere instrumentality of the county through which it employed Northern. The truck which was the means of the injury was the property of the county. Northern was paid by the county for his services. The county was therefore the principal and Gordon the mere subagent.

*Id.* at 503.

Both *Griffin* and *Jackson* support a finding that the duty of a nursing home administrator to adequately manage the facility is owed to the nursing home entity rather than to third parties. Another case that supports such a finding is *Banger v. Magnolia Nursing Home, L.P.*, 234 F.Supp.2d 633 (S.D.Miss.2002), which was decided by this Court. In *Banger,* the nursing home, a diverse defendant, and the nursing home administrator, a non-diverse defendant, were sued *inter alia* for breaches of the duties "to provide adequate and appropriate medical care, food, and water, and to monitor and supervise [plaintiff's] ambulation to prevent falls, and to provide [plaintiff] with bed, bathing, and incontinent care, and to maintain and preserve the dignity of [plaintiff], and to adequately supervise and monitor [plaintiff]."

*Id.* at 638 n. 2. This Court held that the administrator was fraudulently joined for two reasons. First, the Court found that the allegations in the Complaint were "conclusory and generic" to the extent that they were insufficient to assert viable causes of action against the administrator. *Id.* at 638. Second, fraudulent joinder was found because plaintiff produced no evidence that the administrator "had any direct, personal participation in any way with the care of [plaintiff]." *Id.*

The claims in the subject Complaint are strikingly similar to the claims asserted in *Banger.* A review of the Complaint indicates that Plaintiff may have attempted to craft her claims to fit into any "openings" left by the holdings in *Banger.* That is, in paragraph 50 of her Complaint, Plaintiff sought to ensure that her claims were not "conclusory and generic" by including subparagraphs 50(a) through 50(ee) with thirty-one allegations of mismanagement by the non-diverse Defendants. Although these thirty-one allegations could be construed as "non-conclusory and non-generic," all relate to either: (1) the daily hands-on care of Plaintiff; or (2) the typical functions of a manager.

Regarding the claims in paragraph 50 pertaining to the daily care of Plaintiff, the four hospital administrators, Sewell, Sinclair, Blackard and Lindsay, each provided sworn affidavits stating that they were not involved in the hands-on care of Plaintiff.[14] Each affidavit states that "I did not have direct, personal participation in the care given to the residents and did not have direct, personal participation in the care given to Letha M. Gray at Beverly Healthcare–Northwest." Plaintiff provided no evidence rebutting the affidavits of the

administrators. Therefore, the claims against the non-diverse Defendants for failure to provide adequately daily care to Plaintiff must fail.

■ As to the claims that Plaintiff was injured by the non-diverse Defendants because of their failure to adequately manage Beverly Healthcare, the Court finds that absent extenuating circumstances well beyond those pled in the Complaint, a manager owes the duty to adequately perform the functions of management to its principal, or the corporate entities in the subject case, and not to third parties. As articulated by the Mississippi Court of Appeals in *Warren, supra,* the initial step in determining the existence of a negligence or gross negligence cause of action is analyzing whether a defendant owes a plaintiff a particular duty. No Mississippi case has held that the duty to adequately perform the typical function of management are owed to third parties, in addition to the business entity. Absent Mississippi case law to that effect, this Court is unwilling to expand the boundaries of tort law to impose such a duty on business managers. For these reasons, the Court finds that Plaintiff's causes of action against the non-diverse Defendants enumerated in count four of the Complaint for failing to adequately manage Beverly Healthcare must be dismissed.

■ A final argument asserted by Plaintiff is that viable causes of action were asserted against the non-diverse Defendants because of their alleged failure to abide by the provisions of § 73–17–1, *et seq.* of the Mississippi Code, which describe the licensing requirements for a nursing home administrator. This argument is not well taken. "The general rule

---

14. The only other non-diverse Defendant, Landers, held the license to operate Beverly Healthcare. Landers did not provide an affidavit to stating that he had nothing to do with

the daily care of Plaintiff. However, the Court reasonably finds that as the license holder of Beverly Healthcare, Landers was not involved in daily care of the residents.

for the existence of a private right of action under a statute is that the party claiming the right of action must establish a legislative intent, express or implied, to impose liability for violations of that statute." *Connell v. The State of Mississippi*, 841 So.2d 1127, 1131 (2003) (citations omitted). Nothing in the provisions of § 73-17-1, *et seq.* indicates legislative intent to create a private cause of action. Therefore, the non-diverse Defendants cannot be held liable in this cause of action for statutory violations.

For all of the reasons set forth above, the Court finds that the malice and gross negligence claims asserted against the non-diverse Defendants must be dismissed. Next considered is whether Plaintiff asserted viable fraud claims against the non-diverse Defendants.

## D. Count Five: Fraud

Mississippi Rule of Civil Procedure 9(b) states the standards by which a claim of fraud must be pled. Rule 9(b) states "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[15] Analyzing the application of this rule, the Mississippi Supreme Court held:

> In all averments of fraud, the circumstances constituting the fraud shall be stated with particularity. Fraud will not be inferred or presumed and may not be charged in general terms. The circumstances of the alleged fraud such as the time, place and contents of any false representations or conduct must be stated. Rule 9(b), Miss. Rules Civ.Proc.; *McMahon v. McMahon*, 247 Miss. 822, 157 So.2d 494, 495 (1963); Griffith, Mississippi Chancery Practice § 589 (2d ed.1950).

*Brabham v. Brabham*, 483 So.2d 341, 342 (Miss.1986); *see also, Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). "Conditions of the mind, such as intent and malice, are required to be averred only generally." *Allen v. Mac Tools, Inc.*, 671 So.2d 636, 642 (Miss.1996).

■ Two corporate Defendants and seven individual Defendants are parties to this suit. The subject Complaint fails to specify which of the seven individual Defendants made the allegedly fraudulent statements. Under the pleading standards of Rule 9, the Court cannot assume that each of the individual Defendants made all of the allegedly fraudulent statements to Plaintiff. The Complaint further fails to allege the date on which, and location at which the allegedly fraudulent statements were made. In short, the fraud claims in the Complaint are broad and general allegations which fail to identify the specifics of the fraudulent statements, the person(s) who made the statements, and the location(s) and time(s) at which the statements were allegedly made. Under these circumstances, the Court finds that Plaintiff's fraud claims against the non-diverse Defendants fail to meet the pleading standards of Rule 9(b), and that the claims must therefore be dismissed.

## E. Count Six: Breach of a Fiduciary Duty

Plaintiff alleges that the non-diverse Defendants breached their fiduciary duties by failing to care for her in a proper manner. In *Lowery v. Guar. Bank and Trust Co.*, 592 So.2d 79 (Miss.1991), the Mississippi Supreme Court set forth the underlying

**15.** Rule 9(b) of the Federal Rules of Civil Procedure is identical to Rule 9(b) of the Mississippi Rules.

principles of a fiduciary relationship. The court held:

> A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. Black's Law Dictionary 564 (5th Ed.1979). A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, *weakness, dependence,* or trust, justifiably reposed." *Miner v. Bertasi,* 530 So.2d 168, 170 (Miss.1988); *Matter of Estate of Haney,* 516 So.2d 1359 (Miss. 1987).

*Id.* at 83 (emphasis added). In the recently decided case of *Univ. Nursing Assoc., PLLC v. Phillips,* 842 So.2d 1270 (2003), the Mississippi Supreme Court articulated the circumstances under which a contractual relationship may give rise to a fiduciary duty.[16] The circumstances are:

> (1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has *dominion* or *control* over the other. *Hopewell Enters., Inc. v. Trustmark Nat'l Bank,* 680 So.2d 812, 816 (Miss.1996) (quoting *Carter Equip. Co. v. John Deere Ind. & Equip. Co.,* 681 F.2d 386 (5th Cir.1982)).

*Id.* at 1273–74 (emphasis added). The party seeking to establish the existence of a fiduciary duty must prove its existence with clear and convincing evidence. *AmSouth Bank v. Gupta,* 838 So.2d 205, 216 (Miss.2002).

In the subject case, Plaintiffs deteriorating physical and mental condition rendered her "weak" to the extent that she "depended" on Beverly Healthcare for her daily care. In that regard, Beverly Healthcare exercised "dominion" and "control" over Plaintiff. Her "weak" condition and her "dependence" on Beverly Healthcare for her basic needs probably created a fiduciary relationship between Plaintiff and Beverly Healthcare, as contemplated by the *Lowery* and *Phillips* courts. However, the existence, or lack thereof, of a fiduciary relationship between Plaintiff and Beverly Healthcare is not in issue in this Motion to Remand. The issue is whether a fiduciary relationship existed between Plaintiff and the non-diverse Defendants.

As stated above, one of the non-diverse Defendants was the holder of the license to operate Beverly Healthcare, while the remaining four were administrators of the facility. None was responsible for the hands-on daily care of Plaintiff. If the Court were to find a fiduciary relationship between Plaintiff and the non-diverse Defendants, then a reasonable inference could be made that each and every employee of Beverly Healthcare, from the janitorial staff who cleaned Plaintiff's room to the chief executive officer who established policies and procedures for Beverly Healthcare, owed a fiduciary duty to Plaintiff. The non-diverse Defendants were primarily responsible for the management

---

**16.** The Court notes that no contractual relationship existed between Plaintiff and the non-diverse Defendants, who were individuals that either held the license to operate Beverly Healthcare, or administered the affairs of Beverly Healthcare. The contract was between Plaintiff and the Beverly Healthcare business entity. Nevertheless, this Court finds guidance in the analysis of the *Phillips* court in determining whether a fiduciary relationship existed between Plaintiff and the non-diverse Defendants.

of Beverly Healthcare, a responsibility that typically does not create a fiduciary duty. As analyzed above, a fiduciary duty is created only in special circumstances, because such a duty is one of the highest duties that one may owe to another. Plaintiff has come forth with neither case law nor clear and convincing factual evidence that a fiduciary duty was created in this case. Therefore, Plaintiff's claims against the non-diverse Defendants for breach of fiduciary duties must be dismissed.

## IV. Conclusion

Based on the holdings presented above, the Court finds that Plaintiff has failed to assert claims against the non-diverse Defendants for which relief may be granted in state court. Therefore, the non-diverse Defendants, Landers, Sewell, Sinclair, Blackard and Lindsay, should be dismissed from this case, and Plaintiff's Motion to Remand should be denied.

IT IS THEREFORE ORDERED that the Motion of Plaintiff to Remand [11–1] is hereby denied.

IT IS FURTHER ORDERED that Defendants James C. Landers, Lewis Sewell, Charlie R. Sinclair, Jr., Bobbie Lucille Blackard and Alicha D. Lindsay are hereby dismissed from this case with prejudice.