Lawrence HILL, by and Through Letha Kincaid and Eugene Hill, His Next Friends for the Use and Benefit of Lawrence Hill Plaintiffs

v.

BEVERLY ENTERPRISES–MISSISSIPPI, INC.; Beverly Health and Rehabilitation Services, Inc.; James C. Landers, Alicha D. Lindsay; David Devereaux and John Does 1 Through 10 Defendants

No. CIV.A. 3:03CV301LN.

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 31, 2003.

---

Robin E. Blackledge Blair, Prentiss Harrell and Associates, Francis McRae Turner, III, Richard E. Circeo, Mary Jane Perry, James B. McHugh, Wilkes & McHugh, P.A., Hattiesburg, for Plaintiff or Petitioner.

Senith C. Tipton, Thomas H. Riley, III, Faye Murphree James, Wilkins, Stephens & Tipton, P.A., Jackson, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of plaintiff Lawrence Hill, by and through Letha Kincaid and Eugene Hill, to remand pursuant to 28 U.S.C. § 1447. Defendants Beverly Enterprises–Mississippi, Inc. and Beverly Health and Rehabilitation (collectively, Beverly), along with James C. Landers and David Devereaux, have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments submitted by the parties, concludes that plaintiff's motion is well taken and should be granted.

On September 17, 2002, 81–year old Lawrence Hill, suffering from Alzheimer's dementia and no longer competent to handle his own affairs, was admitted to Beverly Healthcare–Northwest, a nursing home owned and operated by the Beverly defendants in Jackson, Mississippi. Three months later, on December 28, 2002, he brought the present action, through his next friends, in the Circuit Court of Hinds County, Mississippi against the Beverly defendants, against David Devereaux and James C. Landers, licensees of the facility, and against Alicha Lindsay, administrator of the facility, alleging that he had suffered "catastrophic injuries, disfigurement, extreme pain, suffering and mental anguish" while under defendants' care, supervision and treatment during his residency at the nursing home, for which he sought to re-

cover damages.[1] Defendants removed the case on the basis of diversity jurisdiction, contending that the amount in controversy obviously exceeds $75,000, despite plaintiff's failure to specify the amount of recovery sought, and that although Hill, a Mississippi citizen, had named as defendants two Mississippi residents, Landers and Lindsay, in addition to the diverse Beverly entities,[2] those resident defendants have been fraudulently joined to defeat diversity. Hill, however, insisting that he has asserted potentially viable claims against the resident defendants, including in particular a cause of action for negligence and/or gross negligence, has moved to remand.[3] The issue presented by the present motion, then, is whether plaintiff has any reasonable possibility of recovery on any claim against either of the resident defendants. *See Ross v. Citifinancial, Inc.,* 344 F.3d 458, 462 (5th Cir.2003) (in fraudulent joinder analysis, "[t]he court must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one.") (citation omitted). "In conducting this inquiry, the ... court 'must ... take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," *id.* (quoting *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir.2003)), and must

also "resolve all ambiguities of state law in favor of the non-removing party," *id.*

In their complaint, plaintiffs allege that defendants Lindsay, Landers and Devereaux were responsible for the management and supervision of the facility, that they failed to properly hire, supervise and train nursing personnel, and they failed to ensure that adequate records were prepared and maintained. In their notice of removal and response to plaintiff's motion to remand, defendants submit that Lindsay, the nursing home administrator, and Landers and Dereveaux, as licensees of the nursing home, can have no personal liability to plaintiff because there is no allegation or proof by plaintiff that these defendants had any direct or personal participation in Lawrence Hill's care and because plaintiff's allegations do not attempt to link their alleged negligence in management and supervision to Mr. Hill's injuries.

Obviously, "liability cannot attach where a defendant does not, as a legal matter, owe a duty of care to the one allegedly injured," *Box v. Beverly Health and Rehabilitation Servs., Inc. et al.,* Civil Action No. 3:03CV22–SAA, slip op. at 5 (N.D.Miss. May 30, 2003), and thus, the first question that presents itself is whether it can be said that a reasonable possibility exists under Mississippi law that the nursing home administrator or licensees owed a duty of care to Lawrence Hill. Assuming the answer is yes, the questions

---

1. The complaint alleges that as a result of various acts and omissions by defendants, to be detailed *infra,* he

   suffered injuries, including physical assault, unexplained injuries, bruises, swollen chin, ribs swollen and bruised, nose bleeds, eyes blood red, brain swelling, and also suffered extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which required Lawrence

   Hill to incur significant hospital and medical expenses.

2. Hill's complaint also identifies David Devereaux as a licensee of the nursing home facility and a Mississippi resident. It appears, though, that Devereaux is in fact a citizen of Arkansas.

3. In his motion, Hill does not deny, and thus implicitly concedes, that the amount in controversy exceeds $75,000.

that follow relate to the nature of the duty owed, whether the duty was breached and if any such breach proximately caused the injuries of which plaintiffs complain.[4]

■ As the court recognized in *Box*, there is no Mississippi statute or case law specific to the question of whether a nursing home administrator owes a legal duty of care to the residents under his supervision. *Box*, No. 3:03CV22–SAA, slip op. at 6. However, in the court's opinion, applying general principles of agency law to the allegations of plaintiff's complaint, this issue must be resolved in favor of finding that such a duty does exist.

■ It is well settled under Mississippi law that an employee, officer or director of a corporate entity incurs liability only when he "directly participates in or authorizes the commission of a tort." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 (5th Cir. 2000). Defendants here argue that since

plaintiffs do not allege that the defendant administrator or licensees directly participated in the care provided to Lawrence Hill, or that they personally directed or authorized the commission of the torts alleged to have been committed by employees of the facility, it follows that they cannot be held personally liable.[5] Defendants' myopic view of "direct participation," however, does not withstand scrutiny.

Although Magistrate Judge Allen Alexander, in the Northern District of Mississippi, denied the plaintiff's motion to remand in *Box, supra*, she did so because the plaintiff, in response to evidence from the defendants, had failed to present his own evidence that his decedent's death was connected to any breach of duty, i.e. "faulty, tortious management," by the nursing home administrator.[6] Notably, however, Judge Alexander recognized that

---

4. Although plaintiff has sued resident licensees of the facility in question, the court need not address the question whether the licensee is potentially liable on any of the claims asserted since the court concludes that plaintiff does have potentially cognizable claims against the administrator.

5. Defendants note that under Mississippi law, an agent for a disclosed principal incurs no liability under a *contract between a third party and a principal*, and that consequently, none of the individual defendants can have liability to plaintiffs on a theory of breach of contract. They further argue that an agent for a disclosed principal is not subject to vicarious liability for the conduct of other agents. While these are, no doubt, correct propositions, they are not determinative of the issue before the court since plaintiffs have another, potentially viable cause of action for negligence based on their contention that the individual defendants committed negligence, including gross negligence, of their own.

6. Judge Pepper distinguished *Box* in *Bradley v. Grancare, Inc., et al.*, Civil Action No. 4:03CV93–P–B (Aug. 15, 2003), stating as follows:

In *Box*, the plaintiff's decedent was taken to the emergency room with a "mark" on his neck and was pronounced dead on arrival. Because the factual allegations of the complaint suggested that the plaintiff's injury-whether accidental or otherwise— was a sudden one, and because the administrator's affidavit professed that he was neither on site at the time nor was he required to be on site at the time, Judge Alexander concluded that the Complaint, as supplemented by the non-diverse defendant's affidavit, did not support a reasonable possibility of recover as to the defendant administrator.

*Id.*, slip op. at 6 n. 4. Judge Pepper continued, stating:

This case, unlike *Box*, presents allegations pertaining to the administrators' duties as managers of the nursing home. Furthermore, the injuries suffered by Mr. Bradley were allegedly the result of long-term neglect which might be reasonable inferred to result from a breach of the administrators' duties to hire, train and supervise nursing home personnel.

*Id.* Judge Pepper's observations are equally applicable here.

under Mississippi law, particularly where the employee or agent of an employee charged with tort liability holds a managerial or administrative position, "direct participation" does not necessarily mean "hands-on participation" in the tortious act itself, so the fact that a nursing home administrator may not have participated in the day-to-day care of a resident is not determinative of the question of the administrator's potential liability.

Judge Bramlette had implicitly recognized this, as well, in *Estate of Willie Belle Barham v. Shady Lawn Nursing Home, Inc.,* Civil Action No. 5:01CV129BrS (S.D.Miss. Oct. 23, 2001), when he remanded a case brought against a nursing home owner and the nursing home's resident/nondiverse administrator. In determining that there existed a possibility of recovery against the administrator, Judge Bramlette recognized that under Mississippi law, it is "clear that where a corporate agent is centrally involved in the negligent execution of managerial duties that allegedly result in a plaintiff's injury or death, a cause of action lies against the agent, regardless of his or her status within the corporation." *Id.,* slip op. at 6 (citing *Mozingo v. Correct,* 752 F.2d 168 (5th Cir.1985)). It followed, he observed, that if the plaintiff's complaint included allegations of the administrator's direct participation in any of the acts and omissions alleged to have caused the decedent's injuries and death, then she could be liable under Mississippi law. He noted that the complaint actually did set forth allegations demonstrating that the administrator had directly participated in the commission of a tort, in that it alleged that she had negligently committed certain acts and omissions that were within her areas of responsibility, and that her negligent execution of her responsibilities as administrator had proximately led to the decedent's injuries. That, he concluded, was enough to show

that the possibility of a successful claim under Mississippi law exists.

Judge Wingate likewise remanded a case against a nursing home and its administrator on similar reasoning in *La-Bauve v. The Service Master Co.,* Civil Action No. 3:00CV785WS (S.D.Miss. Jan. 14, 2002). In *LaBauve,* as in the case at bar, the plaintiffs alleged that the nursing home administrator breached her duty to provide adequate and appropriate custodial care to the residents of the nursing home, including the plaintiff's decedent, and that she had failed to prevent the mistreatment, abuse and neglect of the decedent. The plaintiff alleged, as here, that the administrator, in dereliction of her common law duty and statutory mandate, had failed to provide the minimum number of staff to care for and protect the decedent from harm and to provide sufficient numbers of qualified nurses, assistants and aides to meet the total needs of her decedent. And she alleged that this failure by the administrator to discharge her common law and statutory duties to the decedent had proximately resulted in serious injury, and ultimately the death of their decedent. Defendants in *LaBauve* argued, as they did in *Barham* and as they do here, that the administrator, who never had any contact with the decedent, could not be held liable under Mississippi law for any harm that befell the plaintiff's decedent. Judge Wingate concluded otherwise, finding it "irrelevant that the defendant [administrator] had no personal contact with the decedent" inasmuch as "[t]he plaintiff's cause of action [was] not premised on any personal contact with the defendant had with the decedent." *La-Bauve,* No. 3:00CV785WS, slip op. at 9. "Instead, the plaintiff's cause of action is based on [the] defendant [administrator's] alleged failure to comply with the mandates of Mississippi law, which delegated

to her certain statutory duties for the benefit of nursing home residents including the decedent. The plaintiff does not have to show that [the] defendant [administrator] had personal contact with the decedent to demonstrate a breach of the aforementioned statutory duties." *Id.*

Most recently, Judge Pepper in the Northern District has also rejected defense arguments that nursing home administrators were fraudulently joined, specifically declining to hold that the plaintiffs' failure to allege that the administrators "personally participated in the *care* of [the patients]" warranted a finding of fraudulent joinder. *See, e.g., Bradley v. Grancare, Inc., et al.,* Civil Action No. 4:03CV93–P–B (Aug. 15, 2003) (concurring with reasoning in *LaBauve, Barham* and *Box* ).

■ The reasoning of these cases is sound.[7] Mississippi law, both common law and statutory, places certain duties squarely on the nursing home administrator, and to the extent that such duties are not performed, or are performed negligently, with resulting harm to any resident of the nursing home facility, it may rightly be said that the administrator personally and directly participated in the tort which caused the harm.[8] There is no requirement of personal *contact* but rather of personal *participation* in the tort; and a breach by the administrator of her own duties constitutes direct, personal participation.

By statute in Mississippi, nursing home administrators such as Lindsay are required to be licensed by the State Board of Nursing Home Administrators, Miss.Code Ann. § 73–17–3, and are "charged with the general administration of a nursing home," which is defined to mean "the duties of administrative performance and the making of day-to-day decisions involved in the planning, organizing, directing and/or controlling of a nursing home," Miss.Code Ann. § 73–17–5. The Mississippi Legislature has enacted statutes act governing "Institutions for the Aged or Infirm," Miss.Code Ann. § 43–11–3, *et seq.,* with the declared purpose

> [of protecting and promoting] the public welfare by providing for the development, establishment and enforcement of certain standards in the maintenance and operation of institutions for the aged or infirm which will insure safe, sanitary and reasonably adequate care of individuals in such institutions.

Rule 403.1(a) of the Rules, Regulations and Minimum Standards for the Aged and Infirm adopted by the Mississippi State Board of Health pursuant to the legislature's statutory directive, *see* Miss.Code Ann. § 43–11–13(1), mandates that "[t]here shall be a licensed administrator with authority and responsibility for the operation of the [nursing home] facility in

---

**7.** Judge Pickering has also concluded that a nursing home administrator was not fraudulently joined, stating simply that "[t]here's no way this Court can conclude that there is no possibility that the plaintiffs have not stated a cause of action against the local defendant nursing home administrator." *Dillon v. National Heritage Realty, Inc.,* Civil Action No. 2:03CV242PG (S.D.Miss. Aug. 14, 2003).

**8.** The court is mindful of Judge Barbour's conclusion in *Gray v. Beverly Enterprises–Mississippi, Inc.,* 261 F.Supp.2d 652 (S.D.Miss.

2003), that "the duty of a nursing home administrator to adequately manage the facility is owed to the nursing home rather than to third parties." *Id.* at 659. Like Judge Alexander in *Box,* this is a point on which the undersigned must respectfully disagree, *Box,* slip op. at 7 n. 1, for in the undersigned's opinion, the duty is owed—or certainly could reasonably be found to be owed—not only to the owner of the nursing home, but also to the residents of the home.

all its administrative and professional functions," which functions are defined to include staffing, employment and training, medical records services, food services, protection of residents' rights and resident care. The resident care requirements of the Minimum Standards direct that "[e]ach resident shall receive assistance as needed with activities of daily living to maintain the highest practicable well being...." And the residents' rights policies and procedures prescribed by the Minimum Standards are intended to "ensure that each resident admitted to the facility ... is assured of adequate and appropriate medical care, ... is free from mental and physical abuse, [and] is treated with consideration, respect, and full recognition of his dignity and individuality."

Plaintiff alleges in his complaint that Lindsay breached these duties in that she failed to properly hire, supervise and train nursing personnel, and failed to ensure that adequate records were prepared and maintained.[9] In response to plaintiff's motion to remand, defendants argue that plaintiff may not rely upon the alleged breach of the various state regulations in order to establish liability against any of the defendants, including the individual defendants, since under Mississippi law, a state agency's regulation does not establish a standard of care or a private right of action. In this vein, defendants argue that

in accordance with the Mississippi Supreme Court's holding in *Moore v. Memorial Hospital of Gulfport*, 825 So.2d 658 (Miss.2002), regulations in Mississippi cannot be used to create a legal duty of care for purposes of civil litigation and they argue, accordingly, that plaintiff has no cognizable claim for relief based on allegations that the regulations, or some of them, were violated. It seems, though, that defendants have misread *Moore*.

The Mississippi Supreme Court has never held, and did not hold in *Moore*, that statutes or regulations *cannot* establish a legal duty or standard of care or cannot serve as evidence of negligence. Rather, the court in *Moore* held only that the particular regulations under consideration there, namely the State Pharmacy Board's internal regulations governing the conduct of pharmacies within the State, did not "create a separate cause of action" or "establish a legal duty of care to be applied in a civil action." 825 So.2d at 665. The court's conclusion in *Moore* that those regulations did not establish a legal duty of care was not based on the fact that they were *regulations*, but rather on the fact that the *substance* of those specific regulations was not such as to impose a legal duty on the part of pharmacists. Moreover, the court specifically recognized that "[a] violation of one of [the Pharmacy

---

**9.** The court notes that defendants have not disputed that the statute places these duties on the administrator, and have not contended or presented evidence to show that the duties alleged to have been breached were, in fact, placed on persons other than the administrator. This fact, among others, distinguishes this case from *Gaines v. Mariner Post–Acute Network d/b/a Yazoo City Health and Rehabilitation Center*, Civil Action No. 5:02CV508BrS (S.D.Miss. Mar. 31, 2003), in which the defendants presented proof that the defendant administrator had only been at the facility in question as an interim administrator for a mere three weeks before the date on which

suit was filed; that in his capacity as administrator, he tended to the "business aspects" of the facility; and that hiring and supervision decisions were not within the scope of his assigned responsibilities as administrator but rather were under the charge of the Director of Nursing. The court noted that in the face of defendants' proof, the plaintiff offered "no specific allegations that would impose additional duties on [the administrator], and no evidence to dispute his statement that all nursing and medical issues regarding [the residents] were the responsibility of the director of nursing." *Id.*, slip op. at 6.

Board's] internal regulations ... may serve as evidence of negligence." *Id.* Thus, it is hardly the case, as defendants appear to contend, that regulations cannot establish a standard of care.

While no Mississippi state court has passed on the question whether the nursing home regulations upon which plaintiff's negligence allegations are grounded establish a legal standard of care for nursing home administrators, a review of the regulations certainly does not foreclose a reasonable conclusion that a breach thereof might support a claim for negligence against a nursing home administrator.[10]

What is clear from the foregoing is this: State law places certain duties on nursing home administrators and it is at least reasonably possible that a state court would find that those duties are owed to the residents of nursing homes and that a breach of those duties would constitute evidence of negligence on the part of the nursing home administrator.[11] Furthermore, contrary to defendants' contention, a review of the complaint discloses an adequate allegation of proximate causation between Mr. Hill's alleged injuries and the administrator's alleged dereliction in the areas of staffing, training, supervision and record-keeping to preclude a conclusion that plaintiff has failed to allege a cognizable claim for relief against this defendant. Consequently, the court concludes that

---

**10.** The court is aware of Judge Barbour's opinion in *Banger v. Magnolia Nursing Home, L.P.*, 234 F.Supp.2d 633, 638 (S.D.Miss.2002), in which he concluded that

> [p]laintiffs may not rely on such regulations to create a cause of action where none exists. *See, e.g., Stewart v. Bernstein*, 769 F.2d 1088 (5th Cir.1985); *Moore v. Memorial Hospital of Gulfport*, No.2000–CA–01976SCT, 2002 WL 535908 (Miss.2002). Such regulations exist to provide guidelines and procedures, not to create a legal standard of care for purposes of creating civil litigation. *See Moore*, 2002 WL 535908.

Aside from the fact that Minimum Standard 408.1 expressly states that "the resident has a right of action for damages or other relief for deprivations or infringements of his right to adequate and proper treatment and care established by an applicable statute, rule, regulation or contract....," plaintiff's complaint does not indicate that he is suing directly under the statute for violation of the regulations, but rather merely cites to the statute and regulations as evidence of negligence. *See Moore*, 825 So.2d at 665 (observing that violation of one of the Pharmacy Board's internal regulations "may serve as evidence of negligence" even though the regulations did not create a separate cause of action or establish a legal duty of care to be applied in a civil action); *see also LaBauve*, No. 3:00CV785WS, slip op. at 9 (plaintiff had potentially cognizable cause of action against administrator based on her alleged failure to comply with certain statutory duties for the benefit of nursing home residents); *Bradley v. Grancare, Inc., et al.*, Civil Action No. 4:03CV93–P–B, slip op. at 6 (N.D.Miss. Aug. 15, 2003) (observing that plaintiffs' briefs point out Mississippi statutes which define the duties of nursing home administrators and noting that under case law, namely *Moore*, a violation of a state agency's regulations may serve as evidence of negligence); *cf. Palmer v. Anderson Infirmary Benev. Ass'n*, 656 So.2d 790, 796 (Miss.1995) (observing in dicta that if hospital breached section of Minimum Standards of Operation for Mississippi Hospitals by not requiring the presence of two surgeons during operation, and if the patient was within class of persons protected by that regulation, then patient would have claim of negligence per se if he proved that his injury was caused by such breach) (cited in *LaBauve*).

**11.** Citing *Gray*, which in turn relied on *Bass v. California Life Insurance Co.*, 581 So.2d 1087, 1090 (Miss.1991), defendants argue that in no event would Mississippi law recognize liability on the part of the individual defendants for simple negligence. While this is an area of the law as to which there is arguably uncertainty, *see Dexter v. Moorman Mfg. Co.*, Cause No. 1:97cv125–D–D (N.D. Miss. June 2, 1997) (stating that "[t]he *Bass* decision is limited to the tort-contract hybrid cause of action for bad faith denial of insurance claims"), plaintiff here alleges both negligence and gross negligence.

plaintiff's motion to remand should be granted, and it is therefore ordered that plaintiff's motion to remand is granted.[12]

12. Implicit in the fact that the court has now ruled on the motion is its rejection of defendants' request that this court stay any decision on the motion to remand pending resolution of an appeal of *Gray v. Beverly Enterprises, Inc.,* 261 F.Supp.2d 652 (S.D.Miss.2003).